--------------------------------------------------------------------------------

--------------------------------------------------------------------------------

# 1:11-CV-0335 (GTS/RFT) Exhibit 037

--------------------------------------------------------------------------------

Everett letter about lot merger

Plaintiff application to merge lots

Letter from Plaintiff attorney as to SEQR

Planning Board minutes

Plaintiff attorney letter on merger

Lots merger at county clerk

Invoice of special counsels

Everett letter on lot merger after county merger

Lynch response

Newspaper article regarding lot merger issue

WHITEMAN

OSTERMAN

& HANNA LLP

Attorneys at Law
*www.woh.com*

David R. Everett
Partner
518.487.7743 phone
*deverett@woh.com*

One Commerce Plaza
Albany, New York 12260
518.487.7600 phone
518.487.7777 fax

April 4, 2011

Via Email

Peter A. Lynch, Esq.
Lynch & Hetman, PLLC
111 State Street, 1st Fl.
Albany, NY 12207

**Re:    Town of Stuyvesant/Glencadia Dog Camp: Amended Site Plan Review**

Dear Peter:

Pursuant to your request, attached is the NYSDEC guidance document that I mentioned at the public hearing. The document is entitled "Assessing and Mitigating Noise Impacts." As you may know, this guidance is used commonly by planning boards across the State to help them evaluate and address potential noise impacts from projects.

At the public hearing, the Planning Board directed me to work with you and your client to try to reach an amicable solution to this matter. To that end, I have been asked to make the following proposal to you which outlines the general procedures that both parties could follow to reach a solution. By using this procedure, it is my hope that a solution can be reached that could allow Mr. Pflaum to continue operating his business in the Town in compliance with the Town's laws while ensuring that the neighbors are protected from any adverse noise or other impacts from the business. This proposal is also designed to be carried out in accordance with well established State laws and procedures.

If this proposal is acceptable to you, we can discuss it with the Planning Board at their next meeting to obtain their consent to move forward.

**PROPOSAL ON SITE PLAN ISSUES**

1.    Mr. Pflaum has applied to the Planning Board for an amended site plan approval to impose the following two conditions on the existing site plan: (1) no more than 50 dogs will be present at the facility at any one time; and (2) no dogs will be allowed outside the barn from 7pm to 7am. As you know, the Planning Board cannot legally grant any such conditions or

modify its previous site plan approval until it has complied with the State Environmental Quality Review Act ("SEQRA"). SEQRA requires the Board to evaluate whether the proposed conditions will have any significant adverse environmental impacts including noise impacts. As you know, under SEQRA, the Board would be required to mitigate any such impacts.

2.      In addition, the Board cannot legally approve the proposed conditions until it has determined that they meet the site plan review requirements set forth in Section 9 of the Town's Zoning Ordinance.

3.      The DEC guidance would be used to assist the Board in complying with its SEQRA and site plan obligations with respect to noise.

4.      While the DEC guidance contains a lot of information (some of which may not be relevant to this project), the guidance generally provides that if the proposed conditions increase the ambient noise levels by 6 dBA or more, the increase would be considered significant and would require some further mitigation to reduce the noise levels before the conditions could be approved. Other thresholds are also contained in the policy.

5.      In using the DEC guidance, the Board would not be setting any decibel limits or legislating any such limits on Mr. Pflaum's business.

6.      Based on the DEC guidance, a written noise study would be prepared to determine the environmental impacts, if any, of the proposed conditions.

7.      The study would be prepared by a professional engineer licensed in New York State. The engineer would have experience with conducting noise impact evaluations and using the DEC guidance.

8.      As the applicant, Mr. Pflaum would have the right to retain a professional engineer to conduct the noise testing and prepare the study. If Mr. Pflaum does not wish to retain an engineer, the Town Engineer would conduct the testing and prepare the study at Mr. Pflaum's expense (as discussed below). As you know, the Town Engineer and his company have noise impact experience including evaluating noise from dog kennels.

9.      Before beginning any noise testing, the Town Engineer would develop a short (1-2 page) noise testing protocol on how the noise testing and study would be undertaken. The protocol would be finalized with input from all parties. Implementation of the protocol would require the cooperation of all parties.

10.      While I am not an engineer, based on my prior experience with these types of projects, I assume the protocol would likely require ambient noise testing at various points around Mr. Pflaum's property and in the neighborhood, without any dog noise, and then noise testing at the same locations when 50 dogs are present and barking under a worse-case scenario. Obviously, the engineers would have to work out the protocol.

11.     The noise testing data would then be evaluated by the engineer(s) and compiled into a written study to determine if the proposed conditions would cause a greater than 6 dBA increase in noise in the area and exceed other thresholds in the policy. If so, the Planning Board and the Town Engineer could work with Mr. Pflaum and his engineer to develop appropriate conditions and related mitigation measures to ensure that the noise increase would be kept to acceptable levels. If not, the Board would have credible and objective evidence to undertake its review of the proposed conditions.

12.     The noise study would also be used to determine if the conditions could meet: (1) the noise requirements of a class 2 home occupation under the Town's Zoning Ordinance, which provide that "no unusual ... noise ... that exceed those normally produced by a residence ...."; and (2) the site plan review criteria which provide for the "protection of adjacent or neighboring properties against noise … or other objectionable features."

13.     After completion of the noise study, the Planning Board would resume the public hearing; complete the SEQRA and site plan review processes and complete whatever after legal procedures would be required for it to properly consider the proposed conditions.

14.     While the Planning Board conducts its review of the proposed conditions, the ZBA proceeding would be held in abeyance.

15.     As you know, Section 9 of the Town's Zoning Ordinance (pg. 35) requires Mr. Pflaum to pay for "the reasonable costs incurred by the Planning Board for private consultation fees of a planner, engineer, attorney or other extraordinary expenses in connection with the review of a proposed site plan…". Based on this Ordinance, Mr. Pflaum would be required to pay the Town Engineer's fees incurred in reviewing his amended site plan application and proposed conditions.

The Ordinance also requires that "the Board may require such costs to be paid in advance not to exceed 5% of the total project cost and may deny [the] application upon failure of the applicant to make payment within sixty (60) days of the date of the original application submission." The Planning Board will need to determine whether some advance payment will be required to cover the Town Engineer's fees for this matter. As you know, the reimbursement of a planning board's consulting costs by an applicant is a standard practice across the State.

16.     I understand that Mr. Pflaum has conducted his own non-scientific noise testing using an application on his iPad when 35 dogs were present in his barn. Based on this testing, Mr. Pflaum concluded in a letter submitted to the Board "that the noise level generated by a full barn of dogs was essentially undetectable in terms of decibels …." My proposal would allow the Board to scientifically verify the noise impacts created by 50 dogs, not 35 dogs, using a well-recognized and widely accepted noise assessment methodology.

## PROPOSAL ON ZONING ISSUES

During my review of this file, it appeared to me that Mr. Pflaum's business may not comply with the Town's Zoning Ordinance in a number of respects which are wholly unrelated to noise. For example, the Zoning Ordinance requires that a home occupation be conducted in an accessory structure which is located on the same lot as the dwelling. The kennel is located on a separate lot without a dwelling. There are other possible examples of non-compliance which you heard about at the public hearing. In my opinion, any of these existing violations could constitute grounds for the CEO to determine that Mr. Pflaum's zoning permit was invalid and should be revoked.

As you know, there is no estoppel against a municipality and an existing site plan approval or zoning permit does not authorize Mr. Pflaum's business to violate the Zoning Ordinance and does not prevent the Town or the neighbors from enforcing on these and other violations in the future including revoking his permits subject to his rights of due process. See Parkview Associates v. City of New York, 71 N.Y.2d 274 (1988).

To ensure that Mr. Pflaum's business fully complies with the Town's Ordinance and to ensure that he will not be subject to future enforcement proceedings, we need to develop a global solution to these issues as well. You and I will need to discuss the best way to deal with them. Any thoughts you may have on an approach would be welcome.

## CONCLUSION

Please let me know your thoughts on this proposal. I believe that it is a reasonable attempt to develop a solution that will be based on credible objective evidence and not on emotions or subjective hearsay. Personally, I believe this proposal is preferable to protracted and expensive litigation.

I am available to discuss this proposal with you and your client at your convenience. I greatly appreciate your efforts to date to discuss a reasonable solution. I hope to hear from you soon. Thanks.

Very truly yours,

David R. Everett

Attachment
c:     Gale Bury, Planning Board Chairman
       Planning Board Members
       Ray Jurkowski, Town Engineer

w:\17700\17703\cor\lynch ltr 4.4.11.doc

PLANNING BOARD
TOWN OF STUYVESANT
STUYVESANT, NEW YORK 12173

MINUTES OF JUNE 27, 2011


MEMBERS PRESENT:

Mr. Gale Bury, Chairman
Ms. Marilyn Burch
Ms. Charlene Leach
Ms. Patricia Casey
Mr. Harold Leiser
Mr. Tom Shanahan
Mr. Sean Cummings

MEMBERS ABSENT:

OTHERS PRESENT:

Tal Rappleyea, Town Attorney
Cari Watkins-Bates, Scenic Hudson, Inc.
Tony Colyer-Pendas, Columbia Land Conservancy
Peter Van Alstyne, Land Surveyor


Chairman Bury called the meeting to order at 7:10 p.m. with the Pledge of Allegiance to the Flag.

1.  A motion was made by Harold Leiser and seconded by Marilyn Burch to accept the minutes of the May 23, 2011 meeting after corrections were made to paragraph #5 and #12. All members voted in favor.

2.  Conservation Easement for property owned by Wayne and Roberta Austin, 409 County Route 46, Stuyvesant, NY: Cari Watkins-Bates on behalf of Scenic Hudson Land Trust provided a copy of the contract deed and map for the conservation easement. The easement will conserve approximately 150 acres of farmland. There is a current personal use dirt bike trail on the property that will be phased out after two years. A motion was made by Harold Leiser and seconded by Charlene Leach to accept the conservation easement. All members voted in favor. Chairman Bury stamped the maps.

3.  Conservation Easement for property owned by Monkshood Nursery, 1094 Route 9J, Stuyvesant, NY: Tony Colyer-Pendas on behalf of Columbia Land Conservancy provided a copy of the contract deed and map for a conservation

easement for David and Melinda Rowley (Monkshood Nursery, LLC). The easement will conserve 81.51 acres. A motion was made by Harold Leiser and seconded by Patricia Casey to accept the conservation easement. All members voted in favor. Chairman Bury stamped the maps.

4. Tal Rappleyea excused himself from the meeting due to a conflict with a matter before the Board involving Aenne Grannis and William Pflaum.

5. Public Hearing: Minor Subdivision Application: Aenne Grannis, 3 Rybka Road, Stuyvesant Falls, NY proposes to merge two separate adjoining tax parcels into approximately one 15 acre parcel. The property was previously subdivided into two lots in 2009. Peter Van Alstyne appeared on behalf of the applicants. A motion was made by Tom Shanahan and seconded by Sean Cummings to open the Public Hearing. All members voted in favor. Several questions were asked by the board members and public concerning the application. However, Peter Van Alstyne indicated he only did the survey and did not have the answers to the questions posed. The board discussed the current use of the property as a dog camp and concerns including a positive environmental impact due to the number of dogs, sound issues and amount of dog waste. A motion was made by Harold Leiser and seconded by Tom Shanahan to adjourn the Public Hearing and declare a positive declaration requiring the applicant provide a long environmental assessment form (SEQR). The following members voted in favor of this motion: Gale Bury, Marilyn Burch, Charlene Leach, Patricia Casey, Harold Leiser and Tom Shanahan. Sean Cummings voted against the motion. Since the applicant did not have a representative at the Public Hearing to answer questions on the proposal, the Public Hearing was continued until the next meet meeting scheduled on Monday, July 25, 2011 at 7:00 pm. The Board took no further action on the application.

The next meeting was scheduled for Monday, July 25, 2011 at 7:00 pm. A motion to adjourn the meeting was made by Harold Leiser and seconded by Patricia Casey. All members voted in favor.

Respectfully submitted,


Shirley Narzynski
Planning Board Secretary

From: Peter Lynch <plynch@lynchesq.com>
Subject: **Re: Stuyvesant - Pflaum: Planning Board Meeting Tonight**
Date: July 25, 2011 2:22:25 PM EDT
To: "Everett, David" <DEverett@woh.com>
Cc: "'jgbury@berk.com'" <jgbury@berk.com>, 'Will Pflaum' <will@glencadia.com>

Dave

It is manifest that the PB's issuance of a "positive declaration" under SEQRA to evaluate "a number of significant environmental impacts (including noise)" evidences that the Board has elected to engage in a de novo review of the use.  Please bear in mind that the only application pending is to merge the two lots back into one lot.  The conduct of a de novo review, however, is not authorized (see E.F.S. Ventures v. Foster, 71 N.Y. 2d 359, at 373, where the Court held,

"Specifically, when a Planning Board is considering whether to approve a modification to a site plan where the developer has taken prior action, impervious to attack on SEQRA grounds because of the Statute of Limitations, it is arbitrary and capricious for a Board to condition approval of the modification on the developer's compliance with remedial measures unless those remedial measures have some demonstrable connection with the environmental impact of the proposed modification. Otherwise stated, the Board cannot use its powers to review the environmental impact of the entire project as a pretext for the correction of perceived problems which existed and should have been addressed earlier in the environmental review process."

Clearly, absent authority to engage in a de novo review, the issuance of a positive declaration was in error, for it is manifest that the combination of the two lots into one lot, without more, does not have any demonstrable connection to any potential significant environmental impact.  In fact, the combination of the lots into one lot is ministerial in nature.

I will be appearing at the PB tonight to present this issue and I will ask the PB to rescind the Positive Declaration.  Thank you.  Peter

On 7/25/2011 10:45 AM, Everett, David wrote:

Hi Peter, I hope all is well. I tried to call you this morning but got your voice mail.   I'm writing to follow-up on our recent phone call regarding the last Planning Board meeting for this matter.   I spoke to the Planning Board Chairman about what happened at that meeting.  As you know, I did not attend the meeting (I was on vacation) nor did you or your client.

At that meeting, it's my understanding that the Board voted for a SEQRA Positive Declaration in connection with your client's subdivision application to merge his two lots into one lot.  It's also my understanding that the approval of the subdivision is necessary to allow your client to continue operating the kennel as a Home Occupation under the Zoning Ordinance.  The Board acknowledged that the continued operation of the kennel may have the potential to create a number of significant environmental impacts (including noise) which warranted further evaluation by the Board before the subdivision could be approved.   As you know, the Planning Board and the Town Engineer never had a chance to evaluate or discuss your client's noise report because your client withdrew his amended site plan application before the Board could consider the issue.

Nevertheless, given the issues being considered by the ZBA, I have suggested to the Chairman that the Planning Board postpone this subdivision application and its related SEQRA issues until the ZBA renders its decision.  The ZBA's decision will determine whether the subdivision becomes relevant or not to the Home Occupation issue.  I don't think it's wise for your client or the Planning Board to waste time or money on this Planning Board issue until we know how the ZBA will address it.

As a result, the Planning Board Chairman would like to remove this item from the Board's agenda tonight and postpone it until the ZBA renders a decision.  Please let me know if your client consents to this postponement.  If not, I assume I will see you at the meeting tonight.  Thanks.  Dave

David R. Everett, Esq.
Whiteman Osterman & Hanna, LLP
One Commerce Plaza
Albany, New York 12260
518-487-7743 (phone)
518-487-7777 (fax)
www.woh.com


--
Peter A. Lynch, Esq.

PLANNING BOARD
TOWN OF STUYVESANT
STUYVESANT, NEW YORK 12173

MINUTES OF JULY 25, 2011

** Approved @ 9/26/11 meeting

MEMBERS PRESENT:

Mr. Gale Bury, Chairman
Ms. Marilyn Burch
Ms. Charlene Leach
Ms. Patricia Casey
Mr. Harold Leiser
Mr. Tom Shanahan
Mr. Sean Cummings

MEMBERS ABSENT:

OTHERS PRESENT:

Tal Rappleyea, Town Attorney
David Everett, Esq. (special counsel for the town on the dog camp for Mr. Pflaum)
Peter Lynch, Esq.

Chairman Bury called the meeting to order at 7:03 p.m. with the Pledge of Allegiance to
the Flag.

1.  A motion was made by Harold Leiser and seconded by Patricia Casey to accept
    the minutes of the June 23, 2011 meeting.  All members voted in favor.

2.  Tal Rappleyea excused himself from the meeting due to a conflict with a matter
    before the Board involving Aenne Grannis and William Pflaum.

3.  Minor Subdivision Application:  Aenne Grannis, 3 Rybka Road, Stuyvesant Falls,
    NY proposes to merge two separate adjoining tax parcels into approximately one
    15 acre parcel.  A Public Hearing was held at the June 27, 2011 meeting.  The
    Planning Board adjourned the Public Hearing and declared a positive declaration
    requiring the applicant provide a long environmental assessment form (SEQR).
    Mr. Lynch appeared on behalf of the applicant.  Mr. Lynch argued there was no
    reasonable basis to support a positive environmental significance finding.  Mr.
    Everett stated a positive declaration finding needs to be in writing by the Board
    outlining the environmental concerns and significant environmental impacts.  The
    deficiencies in following the proper procedures would need to be corrected.  A
    motion was made by Tom Shanahan and seconded by Sean Cummings to rescind

the positive declaration without prejudice. All members voted in favor. A motion was made by Gale Bury and seconded by Patricia Casey to postpone action on the subdivision application until the Zoning Board of Appeals makes a decision on Mr. Plfaum's appeal pending before them. All members voted in favor.

4. Minor Subdivision Application: Howard Gibbons Jr., 169 Route 26A, Stuyvesant, NY, proposes to make a boundary line adjustment between two adjacent properties he owns. The property tax map numbers are 52.01-02-26 and 52.01-02-27. The property is located in the Hamlet zone. The Board requested the location of the septic system be identified on the survey maps. A motion was made by Tom Shanahan and seconded by Charlene Leach to accept the application and set a Public Hearing for the next scheduled meeting date of Monday, August 22, 2011 at 7:00 pm. All members voted in favor.

The next meeting was scheduled for Monday, August 22, 2011 at 7:00 pm. A motion to adjourn the meeting was made by Patricia Casey and seconded by Charlene Leach. All members voted in favor.

Respectfully submitted,


Shirley Narzynski
Planning Board Secretary

# LYNCH & HETMAN, PLLC

Attorneys and Counselors at Law

111 State Street, First Floor
Albany, New York 12207

———

Telephone (518) 463-1252
Fax (518) 463-1255*

PETER A. LYNCH, ESQ.*
STEHLE HETMAN, ESQ.

*SERVICE BY FAX NOT ACCEPTED

DONALD L. LYNCH, ESQ.
OF COUNSEL TO THE FIRM
(1988 – 1994)

*ADMITTED TO PRACTICE LAW
IN FLORIDA AND NEW YORK

August 16, 2011

Whiteman Osterman & Hanna, LLP
Attn: David R. Everett, Esq.
One Commerce Plaza
Albany, New York 12260                    Via E-Mail Only

Re:  Planning Board Application to
     Combine 2 Lots into Single Lot
     Will Pflaum – Glencadia Dog Camp

Dear David:

        As you know, on July 25, 2011, the Planning Board rescinded its Positive
Declaration relative to the application to combine the two (2) Lots that Glencadia Dog
Camp is situate on back into one Lot.  On June 22, 2009, the Planning Board issued a
Negative Declaration in advance of approving the Site Plan for the subject Class 2
Home Occupation in accord with Articles 7 and 9 of the Ordinance. The Barn that is use
in this operation is required to be an "on-lot accessory structure", yet the Planning
Board erroneously approved the lot split in conjunction with the site plan.  My client
seeks to correct this error by combing the lots back into a single Lot.

        In context, the pending application to modify the prior approval by combining the
Lots back into a single Lot is not a substantive change, and there is no reason
whatsoever to reopen the Negative Declaration previously issued (see 6 NYCRR 617.7
(e); see also, E.F. S. Ventures v. Foster, 71 N.Y. 2d 359, which prohibits a de novo
review).  In fact, the restoring the Lots into a single Lot is akin to a ministerial
function to correct the Board's error and, as such, is not subject to any further
SEQRA review (see 6 NYCRR 617.5(c)(19)).

        Kindly review and advise.   I remain,

                         Very Truly Yours
                         LYNCH & HETMAN, PLLC
                         *Peter A. Lynch*
                         PETER A. LYNCH, ESQ.


Cc    Zoning Board of Appeals
      C/o Shirley Narzynski, Secretary to the Board

      Will Pflaum via e-mail

## LYNCH & HETMAN, PLLC

Attorneys and Counselors at Law

111 State Street, First Floor
Albany, New York 12207

Telephone (518) 463-1252
Fax (518) 463-1255*

*SERVICE BY FAX NOT ACCEPTED

PETER A. LYNCH, ESQ.*
STEBLE HETMAN, ESQ.

DONALD L. LYNCH, ESQ.
OF COUNSEL TO THE FIRM
(1988 – 1994)

*ADMITTED TO PRACTICE LAW
IN FLORIDA AND NEW YORK

September 7, 2011

Zoning Board of Appeals
Attn: William Vick, Chairperson
C/o Shirley Narzynski, Secretary to the Board
Stuyvesant Town Hall
5 Sunset Drive
Stuyvesant, New York 12173             First Class and E-Mail

Re: Will Pflaum (Glencadia Dog Camp)
    Zoning Board Meeting Date: September 27, 2011 @ 7:00 P.M.

Dear Chairperson Vick and Zoning Board Members:

    I write this letter to address several issues raised at the August 23, 2011
meeting, as ask that this submission be made a part of the record of this proceeding.

    At the August 23, 2011 Meeting, Chairperson Vick questioned whether the barn
could be used as a Home Occupation 2, due to the fact that the barn exists on a
separate lot pursuant to a two-lot subdivision previously approved by the Board. As
more fully appears in my letter of even date to the Planning Board, copy submitted
herewith, my clients have filed a deed in the Columbia County Clerk's Office to merge
the two Lots that they own into a single Tax Map Lot. Thus, they have abandoned the
prior two-Lot subdivision. Accordingly, the Barn and the House now exist on the same
Lot as required by the Zoning Ordinance (see Ordinance page 27, Home-Occupation-Class
2, paragraph 1).

    As you know, the Chairman raised an issue of whether allowing the dogs to go into
the fenced area around the barn was an activity "within the on-lot accessory
structure" as required by the Ordinance (see Ordinance page 27, Home-Occupation-Class
2, paragraph 1). By Ordinance definition, "structures" include "fences over four (4)
feet in height" (see Ordinance, page 12). Here, it is manifest that the fence
creating the yard adjoining the barn exceeds four (4') feet in height and constitutes
part of the on-lot accessory structure that is used to house the dogs, all in accord
with the requirements of a Home Occupation-Class 2.

    I note that there are other Home Occupation 2 uses within the Town that use an
accessory building, and the area around the building as part of the Home Occupation 2
business operation. By way of example, kindly consider the operation of the auto
repair business of Dennis and Shirley Narzynski, 3741 Route 21, Schodack Landing, New
York as a Home Occupation -Class 2. For your reference, I have enclosed an aerial
photo of the repair business, depicting the on site garage and parking areas accessory
to the garage, together with the Planning Board Minutes dated 10/17/02, in which the
Board granted approval of the auto repair shop as a "Home Occupation-Class 2". I have
also attached the Zoning Board of Appeals Minutes dated 1/10/04, 4/27/04, 6/22/04, and

TOSZBA 00467

Zoning Board of Appeals
Attn: William Vick, Chairperson
C/o Shirley Narzynski, Secretary to the Board
September 7, 2011
Page 2

3/27/07, in which the Zoning Board ratified the use of the auto repair shop as a Home Occupation-Class 2, and granted a sign variance for the shop. Clearly, such precedent establishes that use of the immediate area around the accessory structure falls within the parameters of a Home Occupation- Class 2.

   I note that Chairperson Vick also questioned whether the Glencadia Dog camp constituted a commercial business, which should limited to a commercial zone, and not allowed in the subject Zone as a Home Occupation 2. It is manifest that the Dog Camp is a far softer use of the premises than an auto repair shop. It would certainly be arbitrary and capricious to find that an auto repair shop exists as a Home Occupation-Class 2, and that a dog kennel is a commercial business that is not allowed as a Home Occupation-Class 2. Submitted please find an additional copy of the January 27, 2009 letter from the ZEO, stating, "The fact that the business [i.e. the kennel] is housed in your barn makes it become classified as a HOME OCCUPATION-CLASS 2". I note that the Planning Board has already determined that the Dog Camp constitutes a Home Occupation - Class 2, and the Zoning Board does not have appellate jurisdiction over the Planning Board's determination. Last, the premises is insured as a farm and I have enclosed the Insurance receipt for the Board's information. I remain,

                           Very Truly Yours
                           LYNCH & HETMAN, PLLC

                           PETER A. LYNCH, ESQ.

Cc  Whiteman Osterman & Hanna, LLP
    Attn: David R. Everett, Esq. via e-mail

    Will Pflaum via e-mail

TOSZBA 00468

## LYNCH & HETMAN, PLLC

Attorneys and Counselors at Law

111 State Street, First Floor
Albany, New York 12207

Telephone (518) 463-1252
Fax (518) 463-1255*

PETER A. LYNCH, ESQ.*
STEHLE HETMAN, ESQ.

*SERVICE BY FAX NOT ACCEPTED

DONALD L. LYNCH, ESQ.
OF COUNSEL TO THE FIRM
(1988 – 1994)

*ADMITTED TO PRACTICE LAW
IN FLORIDA AND NEW YORK

September 7, 2011

Planning Board
C/o Shirley Narzynski, Secretary to the Board
Stuyvesant Town Hall
5 Sunset Drive
Stuyvesant, New York 12173                    First Class and E-Mail

Re: Application of Willaim Pflaum to Merge Two
    Lots (Tax Map. Nos. 63-1-10.21 and 10.22)
    at 3 Rybka Road into a Single Tax Map Lot

Dear Planning Board Members:

Enclosed, please find a conformed copy of the Deed between Aenne Grannis and
William Pflaum, Grantors, and Aenne Grannis and William Pflaum, Grantees, dated
September 4, 2011, filed in the Columbia County Clerk's Office on September 6, 2011,
together with the filing receipt therefore. The sole purpose of this deed is to merge
the above Lots back into a single Tax Map Lot. In view of the foregoing, there is no
necessity for any further proceedings before the Planning Board on the pending request
to abandon the previously approved two-lot subdivision. Kindly take the necessary
steps to remove the pending application from the Planning Board Agenda. I remain,

                    Very Truly Yours
                    LYNCH & HETMAN, PLLC
                    Peter A. Lynch

                    PETER A. LYNCH, ESQ.

Cc  Whiteman Osterman & Hanna, LLP
    Attn: David R. Everett, Esq. w/enc via e-mail

    Zoning Board of Appeals of the Town of Stuyvesant
    C/o Shirley Narzynski, Secretary to the Board

    Columbia County Real Property Tax Service Agency
    w/enc.

    Assessor of the Town of Stuyvesant
    w/enc.

    Will Pflaum via e-mail

TOSZBA 00469

RECORD AND RETURN:
Lynch & Hetman, PLLC FILED
111 State Street
Albany, New York 12207

2011 SEP -6 A 9 21

N.Y. Deed Warranty (from an Individual) with Lien Covenant COLUMBIA ...
CLERK'S OFFICE

THIS INDENTURE

Made as of the _4th_ day of September, Two Thousand and Eleven

BETWEEN

Aenne Grannis and William Pflaum, Husband and Wife, residing at 3 Rybka
Road, Stuyvesant Falls, New York 12174

party of the first part, and

Aenne Grannis and William Pflaum, Husband and Wife, residing at 3 Rybka
Road, Stuyvesant Falls, New York 12174

party of the second part,

WITNESSETH, that the party of the first part, in consideration of
-------------------One and 00/100------------------Dollar ($1.00)
lawful money of the United States, and other good and valuable
consideration paid by the party of the second part, does hereby grant
and release unto the party of the second part, its successors and
assigns forever, all of its right, title and interest in and to the
premises more fully described in described herein, to wit:

See Metes and bound description in Schedule A annexed hereto and made a
part hereof.

BEING the same the premises conveyed to the party of the first part
herein by deed dated April 6, 2004, recorded in the Columbia County
Clerk's Office on April 19, 2004, in Liber 00495 of deeds at page 1591.

The sole purpose of this deed is to effect a MERGER of the lands
described in Schedule A into one Tax Map Lot. On June 24, 2009, the
Parties of the First part did cause a Subdivision Map approved by the
Town of Stuyvesant Planning Board on June 22, 2009 to be filed in the
Columbia County Clerk's Office as Map No. 09-80. The filed plat
effected a subdivision of the lands described in Schedule A into two
lots. Pursuant to the terms of this Deed, it is the express intent of
the parties hereto to abandon the two-lot subdivision and to merge the
Lots depicted on the filed plat into a single Tax Map Lot under common
ownership.

THIS CONVEYANCE is made subject to any and all enforceable covenants,
conditions, restrictions and easements of record.

TO HAVE AND TO HOLD the premises herein granted unto the party of
the second part, their successors and assigns forever.

AND said party of the first part covenants as follows:

1

TOSZBA 00470

FIRST, that the party of the second part shall quietly enjoy the said premises,

SECOND, that said party of the first part will forever WARRANT the title to said premises.

THIRD, that in compliance with Sec. 13 of the Lien Law, the grantors will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement before using any part of the total of the same for any other purpose.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

IN PRESENCE OF

[S] AENNE GRANNIS
Aenne Grannis

[S] William Pflaum
William Pflaum

STATE OF NEW YORK)
                 ) ss.:
COUNTY OF ALBANY )

On the 4 day of September, in the year 2011 before me, the undersigned, personally appeared Aenne Grannis, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacities, and that by her signature on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

[S] PETER A. LYNCH
Notary Public - State of New York
My Commission Expires 8/31/2014

STATE OF NEW YORK)
                 ) ss.:
COUNTY OF ALBANY )

On the 4 day of September, in the year 2011 before me, the undersigned, personally appeared William Pflaum, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacities, and that by his signature on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

[S] PETER A. LYNCH
Notary Public - State of New York
My Commission Expires 8/31/2014

2

TOSZBA 00471

# First American Title Insurance Company of New York
### Issued by
## SNEERINGER MONAHAN PROVOST REDGRAVE
### TITLE AGENCY, INC.

ALL that certain piece or parcel of land with the buildings and improvements thereon, situate, lying and being in the Town of Stuyvesant, County of Columbia, State of New York, and being bounded and described as follows

BEGINNING at a point in the center of a road known as the West Ghent Road, said point being on the extension of a wire fence and being at the lands of Montano; thence along the center of said road for one (1) course: South 82° 43' 40" East 165.04 feet to a point; thence continuing along the center of said West Ghent Road and then the center of a road known as Rybka Road for one (1) course: South 80°28' 04" East 175.93 feet to a point; thence through the lands of Gumaer the following fourteen (14) courses, the first two of which are along the easterly side of the existing driveway: North 45° 56' 11" East 110.09 feet to a point; thence North 41° 36' 15" East 841.73 feet to a point marked by a wood post; thence South 70° 57' 22" East 142.63 feet to a point marked by a wood post; thence North 36° 16' 49" East 131.98 feet to a point marked by a wood post; thence North 48° 34' 56" West 240.18 feet to a point marked by a wood post; thence North 10° 38' 16" West 279.95 feet to a point marked by an iron rod; thence North 78° 02' 06" West 367.87 feet along the southerly side of a farm road to a point marked by a wood hub on the east bank of a stream; thence along said east bank the following six (6) courses: South 08° 07' 42" West 110.40 feet to a point to be marked by a wood hub; thence South 41° 11' 51" West 129.05 feet to a point to be marked by a wood hub; thence South 46° 43' 41" West 143.58 feet to a point to be marked by a wood hub; thence South 37° 40' 46" West 98.34 feet to a point to be marked by a wood hub; thence South 61° 14' 26" West 194.93 feet to a point to be marked by a wood hub; thence South 21° 50' 20" West 118.71 feet to a point marked by an existing iron pipe; thence along the lands of the aforementioned Montano, being along a wire fence the following course: South 11° 45' 19" West 335.32 feet to the point of beginning.

AS shown on a survey made by R.A. Elliott dated May 12, 1985 and entitled "Lands of Kenneth I. Gumaer, Town of Stuyvesant, Col. Co., N.Y. to be conveyed to Thomas W. Conrad and Timothy G. Wolff," filed in the Columbia County Clerk's Office on May 24, 1985 as Map No. 8802.

SCHEDULE "A"

Sneeringer Monahan Provost Redgrave Title Agency, Inc. – First American Title Insurance Company of New York – Sneeringer Monahan Provost Redgrave Title Agency, Inc.

TOSZBA 00472

Page 433

```
Holly C. Tanner
Columbia County Clerk
Government Center
560 Warren Street
Hudson, NY 12534
Phone: (518) 828-3339

DATE:09/06/2011
TIME:09:18:20 AM
RECEIPT:208817
0

BILL PFLAUM
REF: LSH

ITEM -01 D01 09:18:20 AM
  FILE:2011012440      BK/PG:00716/0409
  DEED SEQ:00000168
GRANNIS AENNE
GRANNIS AENNE
  RECORDING FEE                    41.00
  Rec Mgmt                         14.25
  Rec Mgmt                          4.75
  RP-5217 (Res)                   116.00
  RP-5217 Rec Fee                   9.00
  TP - 584                          5.00
  CC Supp Tax Form       .          5.00
     Sub. Total            195.00
---------------------------------------
AMOUNT DUE:      $195.00
  PAID CHECK:    $195.00
     Check #:629                 $195.00
TOTAL PAID:      $195.00

REC BY:CASH3
Holly C. Tanner
Buy Local & Visit Your Local DMV!
```

TOSZBA 00473

WHITEMAN

OSTERMAN

& HANNA LLP

Attorneys at Law
*www.woh.com*

David R. Everett
Partner
518.487.7743 phone
deverett@woh.com

One Commerce Plaza
Albany, New York 12260
518.487.7600 phone
518.487.7777 fax

December 20, 2011

Via E-mail (plynch@lynchesq.com)

Peter A. Lynch, Esq.
Lynch & Hetman, PLLC
111 State Street, 1st Fl.
Albany, NY 12207

    **Re:**    ***Town of Stuyvesant Planning Board – Merger of Lots Owned by William Pflaum and Aenne Grannis***

Dear Peter:

    I am writing in response to your letters dated September 7, 2011 to the Town of Stuyvesant Planning Board and Zoning Board of Appeals ("ZBA") in which you enclose a copy of the deed (dated September 4, 2011) merging the two lots owned by William Pflaum and Aenne Grannis and request that the pending subdivision application to merge the lots be removed from the Planning Board's agenda. I am writing to advise you that the merger of the two lots without Planning Board approval violates the Town's Subdivision Regulations and the Town reserves all of its rights to enforce the Subdivision Regulations.

    State law provides that the term "subdivision" includes "<u>any alteration of lot lines</u> or dimensions of any lots or sites shown on a plat previously approved and filed in the office of the county clerk...". New York Town Law § 276(4)(a) (Emphasis added). Moreover, under Article II of the Town's Subdivision Regulations, the term "subdivision" is defined as "the division of any parcel of land into two or more lots, blocks, or sites, with or without streets or highways and includes <u>re-subdivision</u>." (Emphasis added). The Stuyvesant Planning Board has consistently interpreted the term "re-subdivision" to encompass lot mergers and has consistently approved lot mergers as subdivisions.[1]

---

[1] As you know, planning boards are entitled to interpret the subdivision laws that they administer, and courts will uphold those interpretations as long as such interpretations are not unreasonable or irrational (*Spears v. Town of Cortlandt Planning Bd.*, 44 A.D.3d 866, 867 (2d Dep't 2007)) or arbitrary and capricious (*Blake v. Planning Bd. of Town of Philipstown*, 21 A.D.3d 486, 487 (2d Dep't 2005)).

Peter A. Lynch, Esq.
December 20, 2011
Page 2

Your client also believed that the lot merger required Planning Board approval because he voluntarily submitted a minor subdivision application to effectively reverse the two-lot subdivision that the Planning Board approved on June 22, 2009 and which is shown on the subdivision plat filed in the Columbia County Clerk's office as Map No. 09-80. The Planning Board accepted the subdivision application for the lot merger on May 23, 2011. A public hearing on the application was held on June 27, 2011, which was continued on July 25, 2011, at which time the Planning Board decided to postpone action on the subdivision application pending the outcome of the related proceeding before the ZBA. At no time during these proceedings did your client ever dispute the need to obtain subdivision approval.

From your letters, it appears that your client decided to abandon his subdivision application and quickly rejoin the lots before the ZBA ruled on his appeal related to the revocation of his Home Occupation – Class 2 permit. His concern was that the ZBA might uphold this revocation because the Home Occupation was situated on two lots rather than one lot as required by the Town's Zoning Code. However, contrary to your assertions, your client was expressly advised by the ZBA at its August 23, 2011 meeting (two weeks before he filed the deeds) that the ZBA was not concerned with the existence of the two lots and would not be deciding his appeal on those grounds. In fact, at that meeting, the ZBA expressly agreed to send the Planning Board a memo asking them to proceed with the subdivision approval to merge the lots.

Nevertheless, instead of proceeding with the subdivision, your client decided instead to subvert the Planning Board's jurisdiction by filing deeds with the County Clerk without proper subdivision approval.

It also appears that when the deed merging your clients' two lots was recorded in the Columbia County Clerk's office, the accompanying Real Property Transfer Report (Form RP-5217) did not indicate, at lines 4A. through 4C., that subdivision approval by the Planning Board was required. To the extent that those boxes were left unchecked in order to induce the County Clerk to accept the deed for recording without further inquiry as to the status of subdivision approval, such action may constitute the offering of a false instrument for filing in violation of the New York Penal Law.

As noted above, the Town reserves its rights to enforce the Subdivision Regulations and to refer this matter to the appropriate authorities for further action.

Very truly yours,

David R. Everett

c:      Gale Bury, Planning Board Chairman
        Valerie Bertram, Supervisor
        Suzette Booy, Director, Columbia County Real Property Tax Service Agency
        Holly Tanner, Columbia County Clerk
        Robert Fitzsimmons, Columbia County Attorney

w:\17700\17703\cor\lynch ltr 12.20.11.docx

**From:** Peter Lynch <plynch@lynchesq.com>
**Subject:** **Re: Town of Stuyvesant Planning Board**
**Date:** December 20, 2011 4:31:01 PM EST
**To:** "Everett, David" <DEverett@woh.com>
**Cc:** "Henry, John" <JHenry@woh.com>, Will Pflaum <will@glencadia.com>
▶ 3 Attachments, 151 KB

---

Dave

Thank you for your letter of even date. The merger deed is simply not a "re-subdividing" of the property. The term "re-subdividing" contemplates the creation of additional lots, not the merger of 2 lots back into the single Lot that previously existed. In view of the lack of definition in the Town's subdivision regulations, Webster's Dictionary defines the term "subdivide" as "to divide again." Thus, to "re-subdivide" contemplates dividing again to create additional lots. The Town's Minor Subdivision Application Form specifically references the application to "divide" into 2, 3, or 4 lots; it does not reference a merger of 2 lots back to 1. The merger deed did not "divide again", but, rather restored the lots back into a single lot. In my opinion, the merger did not require advance Planning Board approval. I personally prepared the deed, TP-584,and RP-5217 based on my interpretation of the law. You may recall that by letters dated September 7, 2011, copies annexed, I forwarded the deed to the PB and ZBA to advise that the merger deed had been filed.

In your letter, you cite a portion of Town Law Section 276 (4) (a) to support your claim. Interestingly, you left out the first sentence of Town Law Section 276 (4) (a), which provides: " 'Subdivision' means the division of any parcel of land into a number of lots, blocks or sites as specified in a local ordinance, law, rule or regulation, with or without streets or highways, for the purpose of sale, transfer of ownership, or development" (underscored emphasis added). The word "division" is defined as "act or process of dividing" (see Websters Dictionary). Subdivision also contemplates the creation of lots (i.e. in the plural) not merger into a single lot. Clearly, the instant merger deed does not constitute a "subdivision" within the meaning of Town Law Section 276 (4) (a).

As attorneys we often disagree as to the interpretation of a statute or issue of law. If I misinterpreted the Ordinance term of "re-subdividing" that is a legal error, but hardly a crime. I can assure you that there was never any "intent to defraud" as required by Penal Law Section 175.05. In context, the fact that you have resorted to a threatened prosecution under the Penal Law is grossly inappropriate, and your legal analysis is both incomplete and incorrect. Kindly consider the foregoing. Peter A. Lynch

On 12/20/2011 2:22 PM, Everett, David wrote:
> On behalf of Dave Everett, attached is a letter in the above-referenced matter.

**Teri Powell** | **Whiteman Osterman & Hanna** LLP

*Assistant to Robert L. Sweeney, Mark T. Sweeney and David R. Everett*
One Commerce Plaza | Albany | New York | 12260
| o | 518.487.7790 | f | 518.487.7777
| e | tpowell@woh.com | w | www.woh.com

This information including attachments may be privileged and/or confidential, and is intended for a specific recipient. If you are not the intended recipient, please destroy this email and attachments and notify the sender.

--
Peter A. Lynch, Esq.
Lynch & Hetman, PLLC
Attorneys at Law
111 State Street
First Floor
Albany, New York 12207
Tel. No. (518) 463-1252
Fax No. (518) 463-1255
Cell No. (518) 466-9062

1:11-CV-0335 (GTS/RFT) Exhibits

Home  ▸  News





PROFESSIONAL GUITAR CABLES by HAVE

(518)828-2000

# Parcel merge causes conflict

**Story**    Comments         Share   Print   Font Size: − +

Tweet  0     Like  0

Posted: Wednesday, December 28, 2011 1:00 am

**By Barbara Reina**
**Hudson-Catskill Newspapers** | 💬 **0 comments**

In the town of Stuyvesant, a merger of lots owned by residents William Pflaum and Aenne Grannis may have an official filing by Columbia County, but according to Attorney David Everett, hired by Stuyvesant, the applicant skipped an important step in the process — town planning board approval.

Pflaum asserts that wording in a letter from Everett to his own attorney, Peter Lynch, suggests that the town is contemplating suing the county because of the way the lot merger was handled. Pflaum stated in a written response to the Register-Star, "Stuyvesant Special Prosecutor David R. Everett of Whiteman, Osterman and Hanna is threatening to sue Columbia County Clerk Holly Tanner for doing her job."



According to Everett, "The town is not suing or even considering suing the county. It was never considered. Moreover, there is nothing in the letter to even suggest otherwise. It appears that someone has twisted the facts into something that they are not."

Town Councilman Ron Knott refuted Pflaum's claim in an interview with the Register-Star. "The town is not going after anybody for it." Knott said.

A letter dated December 20 from Everett, who was hired by the town, to Attorney Peter Lynch, representing Pflaum, states, "It appears that when the deed merging your clients' two lots was recorded in the Columbia County Clerk's office, the accompanying real property transfer report did not indicate, at lines 4A through 4C that subdivision approval by the Planning Board was required."

Stocks

Enter symbol [Get Quote]
Symbol lookup

NYSE NASD S&P

Submit Your News!

We're always interested in hearing about news in our community. Let us know what's going on!

[Submit news]

Calendar

◀ ▶   February 2014
Su Mo Tu We Th Fr Sa
                    1



Nyse ETF      93.25
▲ 0.32   ▲ 0.21%
Nasd_ETFs    426.65
▼ 0.27   ▼ 0.01%
TTIx S&P
500 ETFs     1836.54
Index
▲ 5.89   ▲ 0.32%
Russell 2K    1147.785
▲ 15.249   ▲ 1.346%

10 Yr
Treasury       2.736
Note EOD
▼ 0.03   ▼ 1.09%

Active Markets
Last Updated: 11:30AM CST
02/14/2014





2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23 24 25 26 27 28

today's events

browse

submit

Popular     Commented

◉ Stories

Richard
› 'Farmer' F.
Albright

Four Greene
› residents
arrested on
drug charges

Ghent man
› pleads guilty to
child sex abuse

Richard F.
› 'Farmer'
Albright

More

◉ Photos

◉ Videos

Homes

Lynch responded, "in my opinion, the merger did not require advance Planning Board approval. I personally prepared the deed based on my interpretation of the law."

Pflaum told the Register-Star, "My attorney thinks that you do not need planning board approval to put lots together when they are on the same deed. According to my attorney and our title company, you only need approval by the town Planning Board to split lots apart."

Everett's letter continued, "To the extent that those boxes were left unchecked in order to induce the County Clerk to accept the deed for recording without further inquiry as to the status of subdivision approval, such action may constitute the offering of a false instrument for filing in violation of the New York Penal Law."

Lynch concluded his response with, "as attorneys, we often disagree as to the interpretation of a statute or issue of law. If I misinterpreted the ordinance term of re-subdividing that is a legal error but hardly a crime. I can assure you that there was never any 'intent to fraud' as required by Penal Law section175.05. In context, the fact that you have resorted to a threatened prosecution under the Penal Law is grossly inappropriate and your legal analysis is both incomplete and incorrect."

Pflaum commented, "Everett accuses me and my attorney of some kind of crime, as if it were obvious that you need Planning Board approval and that we knowingly lied when, in fact, it's not even true."

In general reference to lot adjustments, Knott commented, "our main intention is to go on record as saying that we do want the planning board to review" lot mergers. Knott said that such applications, "have always been handled that way."

According to Lynch, "subdivision also contemplates the creation of lots (i.e. in the plural) not merger into a single lot. Clearly, the instant merger deed does not constitute a subdivision within the meaning of Town Law Section 276 (4) (a)."

Knott said that when Pflaum started the procedure, "he was aware that the Planning Board had to review it," since he had approached it earlier for a similar request.

Everett's letter states, "Your client also believed that the lot merger required planning board approval because he voluntarily submitted a minor subdivision application to effectively reverse the two-lot subdivision that the planning board approved on June 22, 2009."





According to Everett's letter, Pflaum applied with the planning board for the lot merger on May 23, 2011. A public hearing was held on June 27, 2011 and extended to July 25, 2011, "at which time the planning board decided to postpone action on the subdivision application pending the outcome of the related proceeding before the ZBA. At no time during these proceedings did your client ever dispute the need to obtain subdivision approval."

Everett wrote, "instead of proceeding with the subdivision, your client decided instead to subvert the planning board's jurisdiction by filing deeds with the county clerk without proper subdivision approval."

Pflaum stated, "we didn't lie. I would file the same form again right now. I'm right. Even if I were wrong, it wouldn't be a crime, but even less so when I'm right."



Posted in News on Wednesday, December 28, 2011 1:00 am.

## More From This Site

- Milk tanker rolls over on 66
- Ghent man charged with sexually abusing second victim
- UPDATED: Expected snow prompts snow emergencies, school closings and municipal meeting changes
- Fight off that wintertime chill
- Three teens in critical condition after Kinderhook crash

## From Around The Web

- Fibromyalgia Patients May Have Lyme Disease (Envita)
- Savannah Guthrie's Wedding Dress: Designer Sketches (Brides.com)
- Bulldozer Clearing Snow Kills a Pregnant Woman (The New York Times)
- Mary J. Blige's Father In Critical Condition After Domestic Violence Attack (Hello Beautiful)
- Celebrity house for sale: Tim McGraw and Faith Hill (Bankrate)

Recommended by 

## From The Web

Sponsored Content by Taboola

### Homes

**Chatham 3 BR $875 518-392-9381 2 BR $860 518-392-7345**

⟳ Updated: Yesterday

**CAIRO/ PALENVILLE 2 Room Studio, laundry on premises, $600 all**

⟳ Updated: Yesterday

**STOTTVILLE 1 BEDROOM WITH W/D**

**$850**

⟳ Updated: Yesterday

More Homes